UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Stephen Allwine | Case No:   24-CV-00439 (JRT/DLM) |
| Petitioner, | |
| v. | **RESPONDENT'S MEMORANDUM IN RESPONSE TO PETITIONER'S MOTION TO EXPAND THE RECORD** |
| William Bolin | |
| Respondent. | |

_____

# INTRODUCTION

Petitioner Stephen Allwine ("Petitioner") has filed a motion to expand the record to include an unsigned document that was last updated on March 11, 2025, allegedly authored by Sean L. Harrington[1] that is riddled with hearsay, speculation, and unsubstantiated allegations against Mark Lanterman, an expert witness called by the State in its prosecution of Petitioner. Petitioner maintains this document (hereinafter referred to as the "Harrington Document") proves that Mr. Lanterman was not a "qualified expert" and allegedly "lied on the stand" about his educational background and about being a faculty member at the Federal Judicial Center. *Petitioner's Motion p. 1.* Petitioner's motion must be denied because the Harrington Document does not contain vital facts to support Petitioner's Habeas Corpus petition and Petitioner has failed to establish the required conditions prescribed by 28 U.S.C.A. § 2254 (e)(2).

---

[1] Mr. Harrington is allegedly an attorney licensed in Wisconsin.

1

## **FACTS**

I. **Mr. Lanterman's Trial Testimony regarding his Educational Background and his role with the Federal Judicial Center.**

Mr. Lanterman testified at Petitioner's trial on January 29, 2018. *15T.1*. During his testimony, Mr. Lanterman was questioned about his educational background, and he stated, "I have an undergraduate and graduate degree both in Computer Science." *15T.7*. Mr. Lanterman's curriculum vitae was admitted into evidence, as part of his expert report, which stated, in relevant parts: 1) "Mark frequently provides training within the legal community including presentations at the…8th Circuit Federal Judicial Center…"; and 2) under "Education and Certifications," it states "Upsala College – B.S. computer Science (1988): M.S. Computer Science (1990)…" *Trial Ex. 139*.

Also, Mr. Lanterman was asked about the Federal Judicial Center, and he stated, in part, "That's were federal judges go for training on how to be federal judges, and I'm faculty there as well." *15T.8*. Later in his testimony, Mr. Lanterman stated, in part, "…I am faculty at the Federal Judicial Center in Washington DC. And last November, I had the honor of giving a presentation to the entire federal bench including the U.S. Supreme Court." *15T.98*.

II. **The Harrington Document Allegations regarding Mr. Lanterman's Educational Background and his role with the Federal Judicial Center.**

To begin with, it must be noted that the Harrington Document, which was last updated on March 11, 2025, contains alleged information and events that took place years after Mr. Lanterman testified at Petitioner's criminal trial.

2

Specifically, the Harrington Document claims that Mr. Lanterman did not receive either a bachelor's or a master's degree in computer science from the now closed Upsala College. *Harrington Document, p. 9.* According to the Harrington Document:

> When Upsala College closed its doors in 1995, Felician University was designated as the successor custodian of records. In response to a formalized degree verification procedure, the registrar replied in writing, 'after numerous attempts' to locate any official transcripts for Lanterman, none were found.

*Id.* This alleged response from the Registrar occurred on November 26, 2023.[2] *Id.*

As to Mr. Lanterman's role with the Federal Judicial Center, the Harrington Document states the following:

> And what about the claim that 'Mark also conducts annual training for the entire Federal judiciary of the Federal Judicial Center in Washington, D.C.?"[3] Retired Admiral John S. Cooke, Director of the FJC, in responding to an inquiry, wrote: "Mr. Lanterman's involvement with the Federal Judicial Center consists of two one-hour webcasts in 2016 and 2017 and a 75-minute presentation at a Center workshop for judges in 2017. We have no plans to invite Mr. Lanterman to speak at future Center programs."

*Harrington Document, pp. 10-11.* According to the Harrington Document, Admiral Cooke's alleged response occurred on November 21, 2023.[4] *Id.*

## ARGUMENT

"Federal courts may…supplement the state record only in extraordinary circumstances because of the obligation to defer to state courts' factual determinations." *Hall v. Luebbers*, 296 F.3d 685, 700 (8th Cir. 2002) (*citing* 28 U.S.C. § 2254(e)(1)). Rule

---

[2] The Harrington Document cites to a "Nov. 26, 2023 registrar report" that was not produced or attached to the document. *Harrington Report, p. 9.*

[3] The Harrington Document cites to a document on a hyperlink that was not produced or attached. *Harrington Document, p. 11.*

[4] The Harrington Document cites to a Nov. 21, 2023, e-mail from FJC John Cook that was not produced or attached to the document. *Harrington Document, pp. 11.*

7 of the Rules Governing Habeas Corpus cases provides that "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." *Mark v. Ault*, 498 F.3d 775, 788 (8th Cir. 2007). A party seeking to expand the record must meet the conditions prescribed by § 2254(e)(2). *Id.*

> Section 2254 (e)(2) provides that:
>
> **2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> **(A)** the claim relies on—
>
> **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*28 U.S.C.A. § 2254 (e)(2)*.

"The factual predicate of a petitioner's claims constitutes the vital facts underlying those claims." *Jimerson v. Payne*, 957 F.3d 916, 924 (8th Cir. 2020) (*citing Earl v. Fabian*, 556 F.3d 717, 725 (8th Cir. 2009)).

In our case, Petitioner appears to be arguing that the Harrington Document allegedly contains "factual predicate that could not have been previously discovered through the exercise of due diligence" pursuant to 28 U.S.C.A. § 2254 (e)(2). In other

4

words, Petitioner claims Mr. Lanterman's alleged lies about having degrees from Upsala College and about being a faculty member with the Federal Judicial Center are vital facts to his Habeas Corpus petition. Petitioner's motion must be denied because: 1) the Harrington Document does not contain vital facts, and even if it did, those alleged facts are not proof that Mr. Lanterman lied about his educational background or about being a faculty member at the Federal Judicial Center; and 2) Petitioner has failed to establish the required conditions prescribed by 28 U.S.C.A. § 2254 (e)(2).

I. **THE HARRINGTON DOCUMENT DOES NOT CONTAIN VITAL FACTS, AND EVEN IF IT DID, THOSE ALLEGED FACTS ARE NOT PROOF THAT MR. LANTERMAN LIED ABOUT HIS EDUCATIONAL BACKGROUND OR ABOUT BEING A FACULTY MEMBER AT THE FEDERAL JUDICIAL CENTER.**

Petitioner claims the Harrington Document contains vital facts about Mr. Lanterman allegedly lying at trial about receiving two degrees from Upsala College and about being a faculty member with the Federal Judicial Center. Petitioner's entire argument consists of unsubstantiated allegations based on hearsay and speculation, and even if those allegations were true, they would not prove that Mr. Lanterman lied on the stand.

First, the Harrington Document--which is hearsay--cites hearsay from an unproduced document, from an unnamed Registrar, from a successor custodian of records who allegedly could not find any official college transcripts for Mr. Lanterman. *Harrington Document, p. 9.* Clearly, this is not factual evidence, vital or otherwise. *Id.* On the contrary, it is an unsubstantiated allegation based on pure hearsay and speculation. *Id.*

5

However, for arguments sake, let's assume there is a Registrar, who looked for Mr. Lanterman's official transcripts and could not find them. Even with this concession, this is not proof that Mr. Lanterman lied about obtaining two degrees from Upsala College. It is only proof that the unnamed Registrar could not find Mr. Lanterman's transcripts in the records the successor custodian of records received from the now closed Upsala College.

Finally, the Harrington Document--which is hearsay--cites hearsay from a retired Admiral John Cook from an unproduced e-mail allegedly stating that Mr. Lanterman did present webcasts and one workshop presentation for the Federal Judicial Center in 2016 and 2017. *Harrington Document, pp. 10-11*. This is not factual evidence, vital or otherwise. *Id.* Instead, this is another unsubstantiated allegation based on hearsay and speculation. *Id.*

Again, for arguments sake, let's assume there is an e-mail from an Admiral John Cook, and it states that Mr. Lanterman did conduct webcasts and one workshop presentation for the Federal Judicial Center in 2016 and 2017. This alleged e-mail says nothing about whether Mr. Lanterman was considered a faculty member at the Federal Judicial Center, and therefore, it is not evidence that Mr. Lanterman lied about being a faculty member. *Id.* Instead, it would be proof that Mr. Lanterman was an instructor at the Federal Judicial Center. [5]

---

[5] A strong argument can be made that if such an e-mail exists, it is proof that, by teaching federal judges through webcasts and presentations, Mr. Lanterman was considered a faculty member at the Federal Judicial Center.

6

Thus, Petitioner's entire motion is based on hearsay, speculation, and unsubstantiated allegations, and even if these unsubstantiated allegations were true, it would not prove that Mr. Lanterman lied about his educational background or about being a faculty member with the Federal Judicial Center. Accordingly, Petitioner's motion to expand the record should be denied because the Harrington Document does not contain any vital facts that allegedly support Petitioner's Habeas Corpus petition.

## II. PETITIONER HAS FAILED TO ESTABLISH THE REQUIRED CONDITIONS PRESCRIBED BY 28 U.S.C. § 2254 (e)(2).

### A. The Harrington Document is Not Newly Discovered Vital Facts.

According to 28 U.S.C. § 2254(e)(2), "[a] habeas petitioner must develop the factual basis of his claim in the state court proceedings rather than in a federal evidentiary hearing unless he shows that his claim relies upon a new, retroactive law, or due diligence could not have previously discovered the facts." *Cox v. Burger,* 398 F.3d 1025, 1030 (8th Cir.2005) (citing 28 U.S.C. § 2254(e)(2)).

Petitioner maintains that the Harrington Document allegedly contains "factual predicate that could not have been previously discovered through the exercise of due diligence" pursuant to 28 U.S.C.A. § 2254 (e)(2). Petitioner's motion must be denied because there are no newly discovered vital facts in the Harrington Document.

Specifically, as addressed in detail in the previous section, the Harrington Document is riddled with hearsay, speculation, and unsubstantiated allegations and it does not contain any facts, vital or otherwise, in support of Petitioner's Habeas Corpus petition. *See Previous Section.* As a result, because the Harrington Document does not

contain newly discovered vital facts, Petitioner has failed to establish this required condition and his motion to expand the record must be denied. *28 U.S.C.A. § 2254 (e)(2)*; *Mark*, 498 F.3d at 788.

> **B. Petitioner has Failed to Show that the Harrington Document Clearly and Convincingly Establishes that No Reasonable Factfinder would have Found him Guilty.**

Under Section 2254(e)(2) "a petitioner must show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Mark*, 498 F.3d at 788 (*quoting Perry v. Kemna,* 356 F.3d 880, 889 (8th Cir.2004)). Petitioner's motion must be denied because Petitioner failed to address this required condition, and even if it was addressed, Petitioner cannot not show that the Harrington Document clearly and convincingly establishes that no reasonable factfinder would have found him guilty.

To begin with, Petitioner failed to address this required condition (*see Petitioner's Motion to Expand Record),* and therefore on this ground alone, Petitioner's motion to expand the record should be denied. *Mark*, 498 F.3d at 788.

Instead of addressing this condition, Petitioner argues that, assuming the allegations in the Harrington Document are true and Mr. Lanterman lacks two degrees from Upsala College and was not a faculty member with the Federal Judicial Center, Mr. Lanterman would not have qualified as an expert witness at trial. *Petitioner's Motion to Expand Record, p. 2.* This is simply not true, and even if Mr. Lanterman was disqualified, it would not have changed the outcome of the trial.

Federal Rule of Evidence 702 states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify" to "scientific, technical, or other specialized knowledge" that will assist the trier of fact. *Fed. R. Evid. 702*. Further, it is important to note that:

> Rule 702 "does not rank academic training over demonstrated practical experience...." *Circle J Dairy, Inc. v. A.O. Smith Harvestore Products, Inc.,* 790 F.2d 694, 700 (8th Cir.1986). That is, an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise. *See, e.g., Davis v. United States,* 865 F.2d 164, 168 (8th Cir.1988) (witness with relevant practical experience but no medical training competent to testify as to the probabilities of transmitting gonorrhea); *Loudermill,* 863 F.2d at 569–70 (witness who was not a medical doctor but who had other substantial scientific training held competent to testify as to the cause of plaintiff's cirrhosis of the liver); *Circle J Dairy,* 790 F.2d at 700 (witness who was not a veterinarian and had no advanced degrees qualified to testify as an expert as to damage to cattle because he had significant practical experience with health problems in dairy cattle).

*Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990).

Here, at the time of trial, Mr. Lanterman had over 25 years of experience in digital forensics; he was the chief technology officer for Computer Forensic Services, Inc.; he had testified as a computer forensics expert in over 2,000 legal proceedings; he was an investigator in both state and federal law enforcement agencies; he was appointed by federal and state court judges as a neutral in computer forensics; and he was an instructor at Mitchell Hamline School of Law, the University of St. Thomas School of Law and the University of Minnesota. *Trial Ex. 139.* Based on these qualifications alone, Mr. Lanterman would have qualified as an expert witness in computer forensics at

9

Petitioner's trial. *Fed. R. Evid. 702; Fox*, 906 F.2d at 1256. Thus, Mr. Lanterman's alleged lack of formal education and teaching experience at the Federal Judicial Center would not have disqualified him as an expert in computer forensics, and it would not have changed the outcome of the trial based on the state's theory that Petitioner killed his wife when a hit he hired fell apart, which was supported by computer forensics and physical evidence.

Finally, even if Mr. Lanterman had not qualified as an expert at Petitioner's trial, there was physical evidence that supported the jury finding Petitioner guilty of murdering his wife, Amy Allwine. For example:

- When officers arrived on scene, they went to the rear bedroom and found Amy face up on the ground with blood around her head. *R. Ex. M (11T.62, 75)*. Officers found a nine-millimeter handgun on Amy's left forearm. *Id.* at 76. Amy was shot at close range in the right ear. *R. Ex. R (16T.26-27)*. The sergeant on scene stated that he had never known someone committing suicide to shoot themselves with their non-dominant hand. *R. Ex. M (11T.135-36)*. Petitioner confirmed that Amy was right-handed. *Id.* at 136-137.

- Law enforcement personnel and scientists from the Bureau of Criminal Apprehension ("BCA") responded to the scene. *R. Ex. M (11T.188)*. The crime scene team leader opined that Amy's position on the floor was not consistent with suicide. *Id.* at 198-201. The medical examiner noted Amy's body had been moved before law enforcement arrived. *R. Ex. R (16T.33-34)*. The crime scene team

found Amy's blood on the floor outside the master bedroom. *R. Ex. M (11T.207-08); R. Ex. P (14T.43-44).*

- The BCA also analyzed swabs taken from the gun. *R. Ex. P (14T.46-47).* Those swabs contained mixtures of DNA from which Petitioner and Amy could not be excluded. *Id.* Over 99% of the population could be excluded as contributors to those samples. *Id.* Police swabbed Petitioner's hands the night of the murder to conduct gunshot residue analysis. *R. Ex. N (12T.118).* A lab tested the samples and found a particle of gunshot residue on Petitioner's right hand. *R. Ex. O (13T.16-17).*

Therefore, even if Mr. Lanterman had not qualified as an expert at trial, the outcome of the trial would not have been different because there was other ample evidence to support the jury's guilty verdict.

Accordingly, because Petitioner cannot not show that the Harrington Document clearly and convincingly establishes that no reasonable factfinder would have found him guilty of murdering his wife, Petitioner has failed to establish this required condition and his motion to expand the record must be denied. *28 U.S.C.A. § 2254 (e)(2)*; *Mark*, 498 F.3d at 788.

## **CONCLUSION**

For these reasons, the Respondent respectfully requests that Petitioner's motion to expand the record be denied in its entirety.

Dated this 28th day of March, 2025.

                                KEVIN MAGNUSON
                                WASHINGTON COUNTY ATTORNEY

                                */s/ Patrick S. Collins*
                                Patrick S. Collins, #0302557
                                Assistant Washington County Attorney
                                Office of the Washington County Attorney
                                15015 62nd Street North, PO Box 6
                                Stillwater, MN   55082
                                (651) 430-6115
                                patrick.collins@co.washington.mn.us

CERTIFICATION OF LENGTH AND TYPE SIZE

I certify that the above memorandum complies with the length and type size requirements of the United States District Court for the District of Minnesota. The memorandum is 2,809 words including footnotes, headings, and quotations, as determined by the word count program used in Microsoft Word. All text including footnotes is type size 13.

Dated this 28th day of March, 2025.

                                                Respectfully submitted,

                                                KEVIN MAGNUSON
                                                WASHINGTON COUNTY ATTORNEY

                                                */s/ Patrick S. Collins*
                                                Patrick S. Collins, #0302557
                                                Assistant Washington County Attorney
                                                Office of the Washington County Attorney
                                                15015 62nd Street North, PO Box 6
                                                Stillwater, MN   55082
                                                (651) 430-6115
                                                patrick.collins@co.washington.mn.us